# Whatley *v.* The State.

## *Indictment for Murder.*

1. *Charge as to measure of proof and reasonable doubt.*—A charge asked, which demands an acquittal, if the jury, after considering and weighing all the evidence, "can not say that they have an abiding and absolute belief of the defendant's guilt," is properly refused, because it demands a higher degree of proof than the law exacts.

2. *Self-defense; charge as to freedom from fault in difficulty with third person.*—Two brothers being indicted and tried for the murder of a man who, as the evidence for the prosecution tended to show, interfered to prevent further fighting in a personal rencounter between them and a third person; a charge which claims an acquittal, if they were free from fault in bringing on that rencounter, ignoring the question of fault as towards the deceased, is properly refused.

3. *Self-defense; interference in behalf of brother.*—Whether one brother may not lawfully strike in defense of another, when engaged in a personal rencounter, if he does not know that the latter was in fault in bringing on the difficulty, or might have avoided it by retreat, is not decided; but, if an opportunity to retreat is offered after his interference, he can claim no greater rights than the other, and neither of them can invoke the doctrine of self-defense.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The defendants in this case, Frank Whatley and Ellie Whatley, brothers, were jointly indicted and tried for the murder of Thomas Deakle, "by stabbing him with a knife," as alleged in the first count; "by knocking him down, kicking him, and beating him," in the second count; and "by beating him, or kicking him, or throwing him upon or against some hard substance to this grand jury unknown." Ellie Whatley was convicted of murder in the second degree, and sentenced to the penitentiary for twenty years; and Frank Whatley was convicted of manslaughter in the first degree, and sentenced to the penitentiary for eight years. The difficulty between the parties occurred on the night of August 6th, 1890, at the house of Mr. and Mrs. Kreiger, "an aged German couple, who gave a birth-day party, and invited the young people of the neighborhood." The deceased, the two defendants, one N. Freeland, and others, were among the guests. Some of the young men had carried a jug of whiskey, which they hid out in the yard; and the evidence showed that all of them were drinking—"were more or less under the influence of liquor, while Ellie Whatley was drunk;" or, as expressed by

one of the witnesses for the defense, "was blind, staggering, crazy drunk." While most of the guests were at the supper table, Mrs. Kreiger asked Freeland to go out into the yard and invite Ellie Whatley in, and he went out for the purpose; but Ellie Whatley refused to come, took offense at something said by Freeland, assaulted him, cut him with a knife, and knocked him down. When Freeland succeeded in rising, and was holding Ellie Whatley, Frank Whatley ran out of the house, calling to Freeland, "turn Ellie loose," and struck him. Deakle, the deceased, who had been sitting at the table, ran out of the house towards the combatants, crying out, "part them, don't let them fight." The evidence for the State was, that Deakle caught hold of Frank Whatley, and attempted to pull him away; that Frank struck him with his fist, pulled him down, and held him while Ellie Whatley stabbed or cut him several times in the back and side, one of the blows penetrating between the ribs, and inflicting a wound which caused the death of Deakle several days afterwards. The defendants' evidence tended to show that Deakle, when he ran up to the combatants, struck Frank Whatley with his fist, and knocked him down; that the parties all rushed together, and were on the ground when the fatal blow was struck; that Frank did not hold Deakle for the purpose of letting Ellie cut him, and did not know, at the time of the struggle, or before or after it, that Ellie was going to cut, or had cut him."

On this evidence, the defendants requested the following charges in writing, and duly excepted to their refusal:

(1.) "If the state of the case is such that, after an entire comparison, consideration, weighing and sifting of all the evidence, it leaves the minds of the jury in that condition that they can not say they have an abiding and absolute belief of the guilt of the defendants, they ought to find them not guilty."

(2.) "If the jury believe from the evidence that, at the time of the commencement of the fight between Ellie Whatley and Freeland, if they believe from the evidence that a fight took place between them, and that after it had commenced, Frank Whatley ran out to where it was going on; and that the evidence shows he knew nothing about the fight until he was informed of it, and then it was he went out to where it was going on; and that, after he got there, it appeared from all the evidence that Ellie and Freeland were engaged in a fight, and it reasonably appeared to him that his brother Ellie was in danger of grievous bodily harm; and that it would have so appeared to any reasonable man; and that it also appeared that said Frank Whatley could not pre-

vent the reasonable appearance of danger of grievous bodly harm to his brother Ellie, without striking said Freeland; he would have the right to strike Freeland in defense of his brother, even though it afterwards turned out that Ellie was not acting in self-defense, but, as matter of fact, was the aggressor in the difficulty which finally resulted in the death of Deakle; unless Frank Whatley combined or confederated with his brother Ellie to cut Deakle, before or at the time of the difficulty between said Frank and Deakle."

(3.) "If the jury believe from all the evidence that Frank Whatley knew nothing of the fight between Ellie Whatley and Freeland until after it commenced, and that he then ran out to where it was going on; and if they further believe that Ellie Whatley was Frank's brother; and that after getting out where the fight was going on, he found that Freeland had Ellie by the throat with one hand, and had a knife in the other hand; and that it reasonably appeared to him that Ellie was in danger of grievous bodily harm, whether or not such danger actually existed, and that it would have so appeared to any reasonable man; then Frank Whatley would be guilty of no offense whatever in striking said Freeland with his fist, unless he combined or confederated at the time, or before the commencement of the difficulty in which Ellie Whatley is alleged to have cut Deakle, and would not be responsible for any act or cutting of said Deakle by Ellie."

SAM. B. BROWNE, and J. J. PARKER, for appellants.

WM. L. MARTIN, Attorney-General, and CLARKES & WEBB, for the State.—Charge No. 1, asked ly defendants, exacts a higher degree of proof than the law requires, and for that reason was properly refused.—*Little v. State*, 89 Ala. 99; *Perry v. State*, 87 Ala. 30; *Blackburn v. State*, 86 Ala. 595; *Lang v. State*, 84 Ala. 1; *Kidd v. State*, 83 Ala. 58; *Hembree v. State*, 81 Ala. 67; *McKleroy v. State*, 77 Ala. 95; *Farish v. State*, 63 Ala. 164; *Coleman v. State*, 59 Ala. 52; *Com. v. Costley*, 118 Mass. 1. Charges 2 and 3 are palpably erroneous. The defendants were indicted and on trial for the murder of *Thomas Deakle*, and not for an injury to the person of Napoleon Freeland, as might be supposed from reading these charges, particularly the charge numbered 2. Its purpose seems to be an attempt to justify, under the facts hypothetically stated, the cutting of Freeland by Frank Whatley; and if given, would have diverted the minds of the jury from the issue before them. The charge numbered 3 would annihilate the law of homicide. If one of the brothers was at fault in

bringing on the difficulty, or could have escaped by retreat, the other had no right to take life in his defense.—9 Am. & Eng. Enc. Law, pp. 605-6.

McCLELLAN, J.—The exceptions reserved go only to the action of the trial court in refusing three charges requested by the defendants. Of these, the first required an acquittal, unless the jury could say they had an abiding and *absolute* belief of the guilt of the defendants. The measure of proof required by this instruction is too great—the degree of conviction of guilt is too high. An absolute belief of the truth of an alleged fact would exclude every doubt of its existence, conjectural, speculative, possible, unreasonable, as well as that reasonable doubt of guilt which alone justifies an acquittal. *McKleroy v. State*, 77 Ala. 95; *Lundy v. State, ante,* p. 100.

Charge No. 2 asserts no proposition of law bearing on the offense charged. It postulates certain facts with reference to the assault by one of the defendants, committed on a person (one Freeland) other than the deceased, and authorizes the jury to find, if they believe these facts, that said defendant had a right to strike Freeland, unless they further found that said defendant conspired with his brother, the other defendant, before or at the time of the commencement of the difficulty, to cut Deakle, the deceased. The action of the court on this instruction was manifestly proper. Each of the defendants, under a phase of the testimony found in this record, would have been wholly unjustified in cutting Deakle, however free from fault each of them may have been in their actions toward Freeland; and a charge which asserts only their rights against the latter, could have no other effect than to confuse the jury in their investigation and consideration of the real issue in the case—the guilt or innocence of the defendants of the murder of Deakle.

The third instruction asked for defendant proceeds on the theory, that one of the defendants, finding the other, his brother, in imminent peril of life or limb, had the right to strike and kill in his defense, although the difficulty was brought on by his brother, and notwithstanding the latter in the first instance might have declined the combat, or safely retreated from it, or might have retreated after his brother came upon the scene, and was thus advised of the situation. The theory is unsound. We need not go to the extent of holding that one may not strike in defense of his brother, though the latter was in fault in bringing on the difficulty, and might have avoided it, if he did not know of such fault or means of escape; but we do hold that the fatal blow

[Louisville & Nashville Railroad Co. v. Hall.]

can not be justified, if the brother might have retreated at or after the time when the other came to his assistance. It is safe to say, at least, that no man may lawfully kill in defense of another, under circumstances known to both, which admitted of retreat by the party in whose behalf the intervention was made; and a charge which fails to negative the existence of an avenue of escape, and demands an acquittal, pretermitting all inquiry as to the feasibility of retreat at any time after the situation is uncovered to the third person making himself a party to the difficulty, is properly refused. *State v. Cain,* 20 W. Va. 681; *Greer v. State,* 22 W. Va. 800; *Summers v. State,* 105 Ind. 125.

A charge requiring an acquittal of the party first engaged in the difficulty, had he delivered the fatal blow, without submitting the question of retreat to the jury, would be bad, and his brother can have no greater or other rights than would have been his.—*Cleveland v. State,* 86 Ala. 1; *Gibson v. State,* 89 Ala. 121.

This instruction, moreover, is open to the same objections taken above to the second charge. It goes to justify the killing of Deakle, because of certain facts existing with respect to Freeland, with whom the difficulty first commenced, when the jury might have found both defendants free from fault so far as Freeland was concerned, and wholly without excuse in respect of Deakle, who, a tendency of the evidence goes to show, intervened in the difficulty in a pacific manner, and with pacific intentions, involving no necessity for his death.

The judgment of the City Court is affirmed.