[No. B015269. Second Dist., Div. Three. Sept. 18, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE BROOKS, Defendant and Appellant.

**COUNSEL**

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

Following a trial by jury, defendant and appellant Ronnie Brooks (appellant) was convicted of second degree murder (Pen. Code, § 187). The jury also found that appellant had personally used a firearm, to wit, a handgun, in the commission of the offense, within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(i). Appellant was sen-

tenced to state prison for a total of 17 years to life. He appealed. We reverse the judgment of conviction with directions.

## STATEMENT OF FACTS

Approximately 2 p.m. on January 29, 1985, Alvin Brooks, appellant's brother, was stabbed to death in the vicinity of Alamitos and 17th streets in the City of Long Beach.

Approximately two hours later, Thurman Todd was shot and killed in the same area.

### *The Prosecution's Case*

About 4 in the afternoon, Thria Shaun Rontay Joseph Stephens, who lived in a house at 1155 East 17th Street, Long Beach, looked out his window and saw yellow crime scene tape around the "Chinese market" at the southwest corner of Alamitos and 17th streets. He also saw many police officers there.

Stephens walked onto 17th Street and talked with some friends about the stabbing murder of Alvin, which he learned occurred about two hours earlier. There were also about 30 other people on the street, milling around, and talking about Alvin's stabbing.

Directly across 17th Street from Stephen's house, where Stephens and his friends were standing, is an apartment building in which Todd lived. A palm tree stands near the curb that fronts Todd's apartment building. As Stephens watched, Todd, whom Stephens recognized as a neighbor, emerged from his apartment building and walked toward the palm tree. He then saw appellant, who was also familiar with him, walk up 17th Street and cross the street to where Todd was standing.

Thereafter, Stephens heard loud yelling and arguing voices coming from the direction of the palm tree. He saw about eight people, including Todd, within 10 feet of the palm tree. Stephens recognized the loud voices as belonging to Todd and appellant. The yelling lasted about 10 seconds. They were arguing about an earlier incident. Stephens heard appellant say, "Where is your knife?"

Then Stephens heard five shots in succession, first three shots, then two more. Appellant, who was standing on the far side of the palm tree, had a shiny object in his hand. Stephens saw fires come out if it. Todd fell to the ground. Everyone scattered, including Stephens and appellant.

Maurice McAdoo, who was at the corner of 17th and Alamitos streets about 4:45 p.m., heard gunshots coming from the vicinity of a palm tree near the intersection. He saw appellant throw his arm forward as if he was shooting somebody or pointing something. Then he saw Todd turn, try to run, and fall.

McAdoo made an in-court identification of appellant as the individual he saw extending his arm toward Todd. McAdoo saw appellant previously only once, approximately two hours earlier that same day, right after appellant's brother was stabbed. After that incident, Stephens watched appellant and three others "running up and down the street . . . pretty vigorously . . . they were going house to house, asking a lot of people different questions, running around the block, coming back, just acting real suspicious."

The next time McAdoo saw appellant, he was sitting in the back seat of a police car and McAdoo identified him as the person who shot the gun.

### The Defense Case

The defense presented evidence of events that occurred prior to appellant's confrontation with Todd at the palm tree.

Officer William MacLiman, of the Long Beach Police Department, was assigned to investigate the stabbing. At the crime scene, he was told that appellant was the brother of the stabbing victim. There were probably 100 people standing on the corner and appellant, in a very excited, upset state, was running around talking to people, and trying to find out who killed his brother.

Stephen Filippini, a Long Beach police officer, was also assigned to investigate the stabbing. During the course of his investigation, Filippini placed Todd in the rear of a police car for questioning. He was also placed there for possible transport to the station, because the crowd was getting unruly and Filippini feared for Todd's safety.

Approximately one hour thereafter, appellant, who was extremely upset, approached the police car and asked if he could speak with Todd. Appellant told Filippini he believed Todd knew more about the killing than he was telling and he wanted to talk to Todd about it. Filippini agreed and appellant asked Todd, in Filippini's presence, who stabbed his brother. Todd told appellant his brother was killed by a man named "Silk." Appellant stood around the police car for a few seconds. Filippini stated he thought appellant was trying to think of who "Silk" might be. Appellant then left.

Appellant wandered around the area speaking with several people in the crowd which had congregated at the corner. About five minutes later, appellant ran back to the police car yelling words of abuse at Todd, pulled open the car door, jumped in, and engaged in a struggle with Todd. Appellant and Todd were separated by police officers and appellant left. Two hours later appellant shot Todd.

Appellant did not testify.

## ISSUE

Did the trial court prejudicially err in failing to give the defense's requested instructions on the lesser included offense of voluntary manslaughter? Yes.

## DISCUSSION

In *People v. Ramkeesoon* (1985) 39 Cal.3d 346, at page 351 [216 Cal.Rptr. 455, 702 P.2d 613], the California Supreme Court set forth the principles governing this case as follows:

■ "It is well settled that the trial court is obligated to instruct on necessarily included offenses—even without a request—when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense. (*People v. Wickersham* (1982) 32 Cal.3d 307, 325 [185 Cal.Rptr. 436, 650 P.2d 311]; *People v. Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].)

"The necessity for instructions on lesser included offenses is based in the defendant's constitutional right to have the jury determine every material issue presented by the evidence. (*People v. Geiger* (1984) 35 Cal.3d 510, 519 [199 Cal.Rptr. 45, 674 P.2d 1303]; *People v. Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].)"

The trial court must instruct on lesser included offenses only if the accused proffers evidence sufficient to "deserve consideration by the jury, i.e., 'evidence from which a jury composed of reasonable men could have concluded'" that the particular facts underlying the instructions did exist. (*People v. Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1], quoting from *People v. Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513].)

Voluntary manslaughter is statutorily defined as the unlawful killing of a human being upon a sudden quarrel or heat of passion. (Pen. Code, § 192,

subd. (a).) ■■■ "If a killing, even though intentional, is shown to have been committed in a heat of passion upon sufficient provocation the absence of malice is presumed. [Citation.] [¶] . . . Because the existence of malice is presumed when the circumstances of a killing suggest an intent to kill . . . provocation *and* heat of passion must be affirmatively demonstrated. [Citations.]" (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People* v. *Flannel, supra,* 25 Cal.3d 668, italics in original.)

■■■ Here, appellant shot the man whom he believed stabbed his brother just two hours earlier. The circumstances suggest that appellant may have acted in the heat of passion upon adequate provocation. Such evidence warrants voluntary manslaughter instructions.

a. *Provocation*

■■■ "[T]here is no specific type of provocation required by section 192 . . . ." (*People* v. *Berry* (1976) 18 Cal.3d 509, 515 [134 Cal.Rptr. 415, 556 P.2d 777].) Generally it is left to the jury to determine whether "'the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.'" (*Ibid.*) "It is for the jury to determine whether a particular provocation measures up to that standard. Of course, where the provocation is so slight or so severe that reasonable jurors could not differ on the issue of adequacy, the court may resolve the question." (2 Wharton's Criminal Law (14th ed. 1979) Provocation, § 155, pp. 242-243.)

The question whether the murder of a family member is legally adequate provocation for voluntary manslaughter has not been answered by the California courts. In other jurisdictions the killing or harming of a defendant's family member is recognized as adequate provocation. (*Collins* v. *United States* (1893) 150 U.S. 62 [37 L.Ed. 998, 14 S.Ct. 9]; *Whatley* v. *State* (1890) 91 Ala. 108 [9 So. 236]; *Gresham* v. *State* (1960) 216 Ga. 106 [115 S.E.2d 191]; *State* v. *Turner* (1912) 246 Mo. 598 [152 S.W. 313]; *Commonwealth* v. *Paese* (1908) 220 Pa. 371 [69 A. 891]; *Butler* v. *State* (1894) 33 Tex.Crim. 232 [26 S.W. 201].)

■■■ A recognition that murder of a family member is legally adequate provocation for voluntary manslaughter would be consistent with previous decisions in this jurisdiction. Other cases have recognized the disclosure of infidelity of a wife (*People* v. *Berry, supra,* 18 Cal.3d 509), a quarrel over the performance of a car mechanic between a father and son (*People* v. *Edgmon* (1968) 267 Cal.App.2d 759 [73 Cal.Rptr. 634]), and even verbal provocation (*People* v. *Berry, supra,* 18 Cal.3d at p. 515), as legally adequate provocation. We cannot say that verbal provocation, blows struck in

a quarrel, or disclosure of infidelity are legally more provocative than the murder of a family member.

Since appellant did not actually see Todd murder his brother, the provocation for killing Todd might more properly be characterized as hearing from bystanders that Todd murdered his brother. A sudden disclosure of an event, where the event is recognized by the law as adequate, may be the equivalent of the event itself, even if the disclosure is untrue. (*State* v. *Yanz* (1901) 74 Conn. 177 [50 A. 37].) In a California case, citing *Yanz,* the court explained that where there is a reasonable belief in the information disclosed, the provocation is adequate. (*People* v. *Logan* (1917) 175 Cal. 45, 49 [164 P. 1121].)

In light of these authorities, we conclude that the disclosure of information that the victim murdered a family member of the defendant is legally adequate provocation for voluntary manslaughter. Both sides agree that Brooks killed Todd because he heard, and thereafter believed, that Todd stabbed his brother.

### b. *Heat of Passion*

The most difficult question presented by this case is whether there is sufficient evidence that Brooks acted in the heat of passion when he killed Todd. ■ "The subjective element requires that the actor be under the influence of a strong passion at the time of the homicide." (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 327.) "'"[P]assion" need not mean "rage" or "anger" but may be any "[v]iolent, intense, high-wrought or enthusiastic emotion."'" (*Ibid.*) "[T]he fundamental inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed or obsessed by some passion—not necessarily fear and never, of course, the passion for revenge—to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." (*People* v. *Berry, supra,* 18 Cal.3d at p. 515.)

The trial court's refusal to give voluntary manslaughter instructions has been condoned where the existence of an elaborate homicide plan "indicate[d] that 'sufficient time [had] elapsed . . . for passion to subside and reason to return . . . .'" (*People* v. *Hyde* (1985) 166 Cal.App.3d 463, 473 [212 Cal.Rptr. 440].) In *Hyde,* the defendant called the father of the victim's girlfriend to find out where the victim worked and what kind of car he drove. He stole a police car, put on his police reserve uniform and drove to the victim's place of employment. When the victim left work, the defendant pulled him over to the side of the road as if to give him a ticket. He forced

him into the police car, drove him to a distant isolated spot, and killed him.

Unlike the *Hyde* case, there is no evidence of an elaborate homicide plan in the case at bar. Appellant did not stalk his victim. There is no evidence that the fatal meeting was anything but a chance encounter. The homicide did not occur at a distant isolated spot, but in front of a crowd of 30 people, according to one witness' estimate. Further, the shooting was preceded by an argument and an accusation.

The prosecution argues the fact that appellant returned to the scene of his confrontation after the passage of two hours, and then fired five shots at Todd, indicates that appellant did not act in the heat of passion. However, evidence in a case based on similar facts was found sufficient to warrant voluntary manslaughter instructions. In *People* v. *Edgmon, supra,* 267 Cal.App.2d 759, the defendant came to his father's house and quarreled over the work done by an auto mechanic recommended by his father. His father hit him over the head with a fishing pole and the son retaliated by hitting his father over the head with a chair, badly injuring him. The son said, "'[w]ait until I get my gun'" (*id.,* at p. 762, fn. 2) and left for his own house next door. Fifteen to thirty minutes later he returned, found his bleeding and incapacitated father, and shot him five times.

The court stated in *Edgmon,* that "[t]he foregoing facts while sufficient to sustain a jury conviction of defendant for first degree murder are not such as to preclude a reasonable verdict of either of the lesser crimes—second degree murder or voluntary manslaughter." (*Id.,* at p. 766.) Here, the fact that two hours later appellant returned with a gun, and fired five shots at Todd, does not prevent a jury of reasonable people from bringing in a verdict of voluntary manslaughter. Thus, under the standards described in *Edgmon,* instructions on voluntary manslaughter are not barred by the evidence.

The People argue that the two hours between the killing and the act that arguably caused the heat of passion was a sufficient cooling period for appellant to have regained his reason. We know of no two-hour period of limitations for a defendant to cool off. The *Edgmon* court pointed out that "no particular period of time need elapse between a passion-producing quarrel and the subsequent killing . . . ." (267 Cal.App.2d at p. 765.)

In *People* v. *Berry, supra,* 18 Cal.3d at page 516, it was held that the defendant acted in the heat of passion even though 20 hours elapsed between the homicide and the last confrontation with the victim.

The People urge the evidence in support of a heat of passion theory of voluntary manslaughter is minimal and insubstantial. We do not agree be-

cause the strength of the evidence offered is comparable to that proffered in other cases in which the California Supreme Court found the requisite heat of passion.

■ The defendant need only show affirmative evidence that he acted in the heat of passion. Where either the prosecution evidence or evidence presented by the defendant is sufficient to raise a reasonable doubt as to whether the killing was malicious, the prosecution bears the burden of persuading the jury as to the defendant's actual mental state. (*People* v. *Hyde, supra,* 166 Cal.App.3d 463, 475.)

In both *People* v. *Wickersham, supra,* 32 Cal.3d 307, and *People* v. *Berry, supra,* 18 Cal.3d 509, heat of passion was established on the basis of witness testimony. In *Wickersham,* two police officers testified that the defendant was hysterical, and her statements unintelligible, shortly after the shooting. Several witnesses testified she was distraught over her husband's involvement with his girlfriend. In *Berry,* the defendant and a court appointed psychiatrist testified that the defendant acted in the heat of passion under an uncontrollable rage when he killed.

In the instant case, the testimony of two police officers was introduced to establish that appellant acted in the heat of passion. They testified that appellant was "very upset" and "extremely upset" and that he was running excitedly around the scene of his brother's murder asking bystanders about the stabbing. The evidence in the instant case is stronger than that in *Berry,* where the only testimony was a self-serving statement by the defendant, that he was in an uncontrollable rage when he killed, and a statement of the psychiatrist, who was not present during either the provocation or the homicide, to the same effect.

According to the standards established in *Wickersham* and *Berry,* there was sufficient evidence to support a defense theory that appellant acted in the heat of passion.

■ Since there is evidence of both provocation and heat of passion, as required by *People* v. *Sedeno, supra,* 10 Cal.3d 703, at page 719, the trial court erred in refusing the defense's requested jury instructions for voluntary manslaughter.

c. *Reversible Error*

"'[I]t is reversible error to refuse a manslaughter instruction in a case where murder is charged, and the evidence would warrant a conviction for manslaughter.'" (*People* v. *Edwards* (1985) 39 Cal.3d 107, 116 [216

Cal.Rptr. 397, 702 P.2d 555].) However, even where the error would be otherwise reversible, the error is harmless when the factual question posed by the omitted instructions was necessarily resolved adversely to the defendant under other, properly given instructions. (*People* v. *Edwards, supra,* 39 Cal.3d at pp. 116-117.)

Here, the jury was instructed only on first and second degree murder. There was no instruction to the jury to consider evidence of provocation in order to determine whether appellant, as an ordinary man of average disposition, committed the homicide while in the heat of passion. (*People* v. *Berry, supra,* 18 Cal.3d at p. 518.)

Therefore, the factual question posed by the omitted instruction was not necessarily resolved adversely to defendant under other, properly given instructions. (*People* v. *Edwards, supra,* 39 Cal.3d at pp. 116-117.) That being so, it cannot be said that the failure to give the requested instructions on voluntary manslaughter was harmless error; thus, appellant's conviction for second degree murder must be reversed. (*Ibid.*)

■ "Although defendant's convictions cannot stand, it does not necessarily follow that the judgment must be unconditionally reversed. 'An appellate court is not restricted to the remedies of affirming or reversing a judgment. Where the prejudicial error goes only to the degree of the offense for which the defendant was convicted, the appellate court may reduce the conviction to a lesser degree and affirm the judgment as modified, thereby obviating the necessity for a retrial.'" (*People* v. *Edwards, supra,* 39 Cal.3d at p. 118.)

The People, however, are entitled to try to obtain another conviction for second degree murder. The record contains sufficient evidence to justify the attempt. On the other hand, the prosecution may decide that it is satisfied with voluntary manslaughter. Therefore, our disposition preserves these two options. (See *People* v. *Edwards, supra,* 39 Cal.3d at p. 118; *People* v. *Garcia* (1972) 27 Cal.App.3d 639, 647-648 [104 Cal.Rptr. 69].)

### DISPOSITION

The judgment is reversed with directions as follows: If the People do not bring the defendant to trial within 60 days after the filing of the remittitur in the trial court pursuant to Penal Code section 1382, subdivision 2, the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of voluntary manslaughter (Pen. Code, § 192) and use of a firearm within the meaning of Penal Code sections

12022.5 and 1203.06, subdivision (a)(i), and shall resentence the defendant accordingly. (See *People* v. *Edwards, supra,* 39 Cal.3d at p. 118.)

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied October 15, 1986.