[No. B082986. Second Dist., Div. Five. Mar. 6, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL SIMS DIXON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IIA and IIB.

†Pursuant to California Constitution, article VI, section 21.

1548

**COUNSEL**

Kevin C. McLean, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Sharon Wooden-Richard and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### TURNER, P. J.—

#### I. INTRODUCTION

Defendant, Michael Sims Dixon, appeals his conviction for second degree murder plus a finding he personally used a firearm. (Pen. Code,[1] §§ 187, 12022.5.) He raises various contentions on appeal, but in the published portion of this opinion, we address the issue of whether the trial judge had a sua sponte duty to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter. We conclude no sua sponte duty to instruct as to those crimes existed because there was no substantial evidence to support those two lesser offenses and affirm the judgment.

#### II. DISCUSSION

##### A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

#### C. *Manslaughter instructions*

Defendant argues that the trial judge had a sua sponte duty to instruct the jury concerning the lesser and necessarily included offenses of voluntary and involuntary manslaughter. (§§ 192, subds. (a) and (b).)[2] The testimony at trial indicated that Donald Gilbert, a school custodian and caretaker, saw the shooting. According to Mr. Gilbert, the decedent, Vanessa Forrest, was arguing with four men, one of whom was defendant. Mr. Gilbert could hear the decedent loudly stating, " 'No, I don't want to get in the car.' " The four men, one of whom was defendant, were trying to "force" the decedent into a

---

[1] All future statutory references are to the Penal Code unless otherwise indicated.

*See footnote, *ante*, page 1547.

[2] Section 192, subdivisions (a) and (b) provide in pertinent part: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: [¶] (a) Voluntary— upon a sudden quarrel or heat of passion. [¶] (b) Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle." The third form of the offense is vehicular manslaughter which is described in section 192, subdivision (c), and that crime is not relevant to the present case.

car. The three men then got into the car, which was then driven away. Defendant remained with the decedent. He then took two or three steps away from the decedent. Defendant produced a handgun and the decedent grasped the light pole she had been using moments earlier to resist being forced into the car. She said: " 'Oh, my God. Oh, my God.' " Defendant then fired between two and six shots towards her back. Two of the shots struck her in the back. The remaining rounds missed her. The decedent, fatally wounded, slid down the pole and fell to the ground with her face in the gutter. Defendant then fled. There was additional evidence: the decedent was a prostitute; she had a cocaine pipe in her possession at the time of her death; and defendant said he shot the decedent because she had refused to perform a sexual act after she had been given some drugs.

■ The sua sponte duty to instruct concerning lesser and necessarily included offenses exists under the following circumstances: "In past cases, we have held that the trial court has a sua sponte obligation to give instructions on necessarily included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present and there is evidence that would justify a conviction of such a lesser offense [citations] 'but not when there is no evidence that the offense was less than charged.' [Citations.]" (*People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1232-1233 [249 Cal.Rptr. 71, 756 P.2d 795]; *People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-324 [185 Cal.Rptr. 436, 650 P.2d 311].) ■ Defendant first argues that voluntary manslaughter instructions should have been given on a theory that the killing occurred in the heat of passion. ■ The test as delineated by Chief Justice Bird for the heat of passion sufficient to reduce the offense of murder to voluntary manslaughter is as follows: " ' "The jury is . . . to be admonished and advised by the court that this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances, and that, consequently, no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man. . . . For the fundamental of the inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed or obscured by some passion—not necessarily fear and never, of course, the passion for revenge—to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." ' [¶] To satisfy the objective or 'reasonable person' element of this form of voluntary manslaughter, the accused's heat of passion must be due to 'sufficient provocation.' [Citation.] However, as this court stated in [*People* v. ] *Berry* [(1976) 18 Cal.3d 509, 515 (134 Cal.Rptr. 415, 556

P.2d 777)], 'there is no specific type of provocation required by section 192 and . . . verbal provocation may be sufficient.' [Citation.] [¶] The subjective element requires that the actor be under the actual influence of a strong passion at the time of the homicide. 'In *People* v. *Borchers* (1958) 50 Cal.2d 321, 329 [] in the course of explaining the phrase "heat of passion" used in the statute defining manslaughter we pointed out that "passion" need not mean "rage" or "anger" but may be any "[v]iolent, intense, high-wrought or enthusiastic emotion" and concluded there "that defendant was aroused to a heat of 'passion' by a series of events over a considerable period of time . . . ." [Citation.]' [Citation.] However, if sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter—'the assailant must act under the smart of that sudden quarrel or heat of passion.'" (*People* v. *Wickersham, supra,* 32 Cal.3d at pp. 326-327, fn. omitted.)

■ The burden to set forth sufficient evidence of heat of passion, as that term has been defined by the California Supreme Court, rests with the defendant. In *People* v. *Sedeno* (1974) 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913], the Supreme Court defined the defendant's burden as follows: "Unlike most necessarily included offenses, however, where instructions must be given *sua sponte* if there is any possibility that the jury might have a reasonable doubt whether all of the elements of the greater offense have been proven, voluntary manslaughter in the heat of passion is unique in that the statutory definition of the offense specifies the circumstances in which the law will presume the absence of malice, the element which distinguishes murder from manslaughter. If a killing, even though intentional, is shown to have been committed in a heat of passion upon sufficient provocation the absence of malice is presumed. [Citation.] [¶] However, unless it appears from the prosecution's case that the killing was committed in the heat of passion and upon sufficient provocation the burden is on the defendant to raise a reasonable doubt in the minds of the jurors that malice is present. [Citation.] Because the existence of malice is presumed when the circumstances of a killing suggest an intent to kill or that ' "the killing proximately resulted from an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life" ' [citation], provocation *and* heat of passion must be affirmatively demonstrated. [Citations.] It is not enough that provocation alone be demonstrated. There must also be evidence . . . that defendant's reason was in fact obscured by passion at the time of the act." (Original italics.)

In varying situations, the California Supreme Court has held there was no duty to instruct on the included offense of voluntary manslaughter in a

murder prosecution. In *People* v. *Sedeno, supra,* 10 Cal.3d at pages 719-720, the defendant claimed he was being kicked and choked by the victim, a police officer. However, the Supreme Court held this evidence was insufficient to create a sua sponte duty to instruct concerning voluntary manslaughter. Chief Justice Wright concluded: "Here defendant testified that the arresting officers kicked and choked him although he was not resisting. That evidence might form the basis for a finding of adequate provocation. But no evidence was offered that suggested that defendant was acting in a resultant heat of passion when he shot Officer Klass. . . . He may not, however, expect the trial judge to give a *sua sponte* instruction on that theory of manslaughter when his own testimony is to the effect that he was not acting in a heat of passion and there is neither direct evidence of heat of passion nor reason for the court to know that he is relying on that defense." (*Id.* at pp. 719-720.)

In *People* v. *Balderas* (1985) 41 Cal.3d 144, 196 [222 Cal.Rptr. 184, 711 P.2d 480], the defendant robbed the decedent. The decedent resisted. The defendant then shot the decedent. The court held that anger occurring when a victim resists during the perpetration of a crime is not provocation for voluntary manslaughter purposes. Justice Grodin wrote: "This court has concluded, under similar circumstances and without extended discussion, that 'predictable conduct by a resisting victim' of a felony cannot 'constitute the kind of provocation sufficient to reduce a murder charge to voluntary manslaughter . . . .' " (*Id.* at pp. 196-197.)

In *People* v. *Daniels* (1991) 52 Cal.3d 815, 837, 868-869 [277 Cal.Rptr. 122, 802 P.2d 906], the defendant was rendered a paraplegic when he was shot by police officers after a bank robbery. Over two years, three months after he was shot, several police officers came to the defendant's residence to arrest him. Defendant shot and killed the officers as they walked towards the front door of the residence. On appeal, defendant contended his request for voluntary manslaughter instructions based on heat of passion should have been granted. Our Supreme Court held: "In the present case there is no evidence of provocation by the slain officers, and no evidence that defendant was in the 'heat of passion' when he killed them. The theory that defendant was bent on revenge for having been crippled by police gunfire after the bank robbery is insufficient to justify a manslaughter instruction. For such an instruction, the killing must be 'upon a sudden quarrel or heat of passion' (§ 192); that is, 'suddenly as a response to the provocation, and not belatedly as revenge or punishment. Hence, the rule is that, if sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.' [Citations.] The period of over two years and three months between defendant's injury and the killing of the

police is, as a matter of law, sufficient to allow passions to cool." (*Id.* at p. 868.)

In *People* v. *Pride* (1992) 3 Cal.4th 195, 216, 221, 250 [10 Cal.Rptr.2d 636, 833 P.2d 643], the defendant, a janitor, was subjected to a written criticism of his work at his place of employment. He became angry. Three days later, he repeatedly stabbed one decedent 18 times; the other decedent was stabbed 69 times. (*Id.* at p. 215.) Our Supreme Court held that no voluntary manslaughter instructions need have been given because the work criticism was insufficient provocation. The court held: "To the extent defendant relies on criticism he received about his work performance *three days* before the crimes, such evidence is insufficient as a matter of law to arouse feelings of homicidal rage or passion in an ordinarily reasonable person. [Citation.] . . . And, because the injuries inflicted upon the victims were consistent with either a provoked or a premeditated killing, we reject defendant's claim that this evidence, when combined with the evidence that defendant's work performance was criticized, justified the requested instructions. On this record, failure to instruct on voluntary manslaughter was not error." (*Id.* at p. 250, original italics.)

One Court of Appeal opinion is particularly pertinent to the present case. In *People* v. *Hyde* (1985) 166 Cal.App.3d 463, 472-473 [212 Cal.Rptr. 440], the defendant was jealous because his girlfriend dated another man. Defendant stalked him for several days before the actual killing. Speaking for the court, Associate Justice Weiner held: "In the present case, the evidence suggests neither passion in the sense of 'violent, intense, high-wrought or enthusiastic emotion' [citations] or any—let alone sufficient—provocation. It was firmly established at trial that [defendant] contrived an elaborate plan to abduct [the new boyfriend] and that he stalked the victim for several days before the actual killing. Not only do we refuse to countenance any suggestion that [the new boyfriend's] mere dating of [the former girlfriend] after she broke up with [the defendant] constitutes provocation, but in any event [the defendant's] elaborate plan indicates that 'sufficient time [had] elapsed . . . for passion to subside and reason to return . . . .' [Citation.]" (*Id.* at p. 473.)

 Applying the foregoing authority to the present case, we conclude that voluntary manslaughter instructions would have been inappropriate. Defendant failed to provide substantial evidence of provocation in two separate and distinct respects. To begin with, defendant presented no evidence as to the time lag between the alleged act of provocation, the refusal to engage in sexual conduct after having been provided drugs, and the fatal shooting. As noted previously, the killing must be upon a "sudden quarrel or

heat of passion" and if sufficient time "for the passions of an ordinarily reasonable person to cool" (*People* v. *Daniels*, *supra*, 52 Cal.3d at p. 868) has elapsed, the homicide is not manslaughter. Chief Justice Bird described the test as follows, "[I]f sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter—'the assailant must act under the smart of that sudden quarrel or heat of passion.' [Citation.]" (*People* v. *Wickersham*, *supra*, 32 Cal.3d at p. 327.) In the present case, there was no testimony as to when the decedent refused to engage in sexual conduct with defendant. The California Supreme Court has held that the burden to present substantial evidence of the crime of manslaughter rests with the defendant. (*Id.* at p. 325; *People* v. *Sedeno*, *supra*, 10 Cal.3d at p. 719.) Chief Justice Bird noted in the context of the duty to instruct on manslaughter, "The trial court is not obligated to instruct *sua sponte* on necessarily included offenses unless the evidence would justify a conviction of such offenses. [Citation.]" (*People* v. *Wickersham*, *supra*, 32 Cal.3d at p. 325.) The crime of voluntary manslaughter only can be committed when the killing occurs if the defendant acts " 'under the smart of [the] sudden quarrel or heat of passion' " (*id.* at p. 327) and in the present case there is no evidence of the requisite temporal relationship between the provocation and killing. One commentator has noted, "If the provocation would have induced passion in a reasonable man, the next inquiry is a subjective one: Was there such a time interval between the provocation and the homicide that the passion of the defendant had in fact cooled. If the defendant's passion had in fact cooled, voluntary manslaughter is out of the case." (2 Wharton's Criminal Law (15th ed. 1993) § 166, pp. 367-368; see 2 LaFave, Substantive Criminal Law (1986) § 7.10, pp. 265-268.) The complete absence of evidence of the time interval between the alleged provocation and the shooting precluded the presentation of manslaughter instructions.[3]

However separate and apart from the absence of substantial evidence of a temporal proximity between the homicide and the alleged failure to engage in sexual conduct, there was no testimony to support the conclusion there

---

[3]The complete absence of any evidence concerning the temporal relationship between the alleged provocation and the killing distinguishes the present·case from *People* v. *Brooks* (1986) 185 Cal.App.3d 687, 694-696 [230 Cal.Rptr. 86] and the decisional authority discussed therein. *Brooks* held that a two-hour time lag between the provocation and the killing was such that the manslaughter issue should have been presented to the jury. The *Brooks* court noted that the Supreme Court in *People* v. *Berry* (1976) 18 Cal.3d 509, 516 [134 Cal.Rptr. 415, 556 P.2d 777], a case involving aggravated provocative conduct, had held a 20-hour interval was sufficient to allow the issue to go to the jury. (*People* v. *Brooks*, *supra*, 185 Cal.App.3d at p. 695.) However, the present case involves the complete absence of *any* evidence of the time differential between the provocation and the killing, a factual scenario not previously discussed by California appellate courts in the sua sponte duty to instruct context.

was sufficient provocation to "arouse feelings of homicidal rage or passion in an ordinarily reasonable person." (*People* v. *Pride, supra,* 3 Cal.4th at p. 250.) As noted previously, there must be evidence of " 'sufficient provocation' " (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 326) as so "to arouse homicidal rage or passion in an ordinarily reasonable person." (*People* v. *Pride, supra,* 3 Cal.4th at p. 250.) We reject the notion that the refusal to engage in sexual relations with another after being provided drugs constitutes the kind of provocation recognized by California law to mitigate the crime of murder. (*People* v. *Hyde, supra,* 166 Cal.App.3d at p. 473.)[4] Accordingly, because there was no substantial evidence defendant acted sufficiently soon after the alleged provocation nor would a reasonable person develop homicidal rage and shoot another twice in the back for refusing to engage in sexual relations after having provided drugs, there was no need to give a voluntary manslaughter instruction to the jury.

■■ Second, defendant argues the trial judge had a sua sponte duty to instruct on the lesser included offense of involuntary manslaughter which may be committed in the following manner: when the killing occurs during the commission of an inherently dangerous misdemeanor (*People* v. *Stuart* (1965) 47 Cal.2d 167, 173 [302 P.2d 5, 55 A.L.R.2d 705]); in the commission of a "noninherently dangerous felony (which might, nevertheless, produce death if committed without due caution and circumspection)" (*People* v. *Burroughs* (1984) 35 Cal.3d 824, 836 [201 Cal.Rptr. 319, 678 P.2d 894]); or in the perpetration of a lawful act in an unlawful manner without due caution and circumspection. (*Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 135 [253 Cal.Rptr. 1, 763 P.2d 852].) However, regardless of the manner an act of involuntary manslaughter is committed, the killing *must* be unintentional. (*People* v. *Hendricks* (1988) 44 Cal.3d 635, 643 [244 Cal.Rptr. 181, 749 P.2d 836]; *People* v. *Burton* (1971) 6 Cal.3d 375, 385 [99 Cal.Rptr. 1, 491 P.2d 793]; *People* v. *Glenn* (1991) 229 Cal.App.3d 1461, 1465 [280 Cal.Rptr. 609].) If a killing is intentional, no involuntary manslaughter instructions may be given. The controlling authority is *People* v. *Hendricks, supra,* 44 Cal.3d at page 643 where our Supreme Court held: "The third proposed instruction involved involuntary manslaughter. It is of course the rule that the court is under no duty to give a requested instruction when there is no substantial evidence in support. [Citation.] 'Involuntary manslaughter is . . . inherently an *unintentional* killing.' [Citations.] As the physical evidence established, defendant shot [one victim] six times at point-blank range, the last three times as he lay on the floor unconscious; he shot [the

---

[4]Our conclusion that the refusal to engage in sexual relations after having been provided narcotics does not mitigate a killing is consistent with the views expressed by secondary authorities. (2 Wharton's Criminal Law, *supra,* §§ 155-165, pp. 346-366; 2 LaFave, *supra,* § 7.10(b), pp. 255-264.)

other victim] five times at point-blank range, the last three times as he lay prone on the bed. In light of this evidence, defendant's self-serving tape-recorded statements denying an intent to kill cannot be deemed substantial in character. Therefore, the court did not err in refusing the involuntary manslaughter instruction." (Original italics.)

In the present case, the decedent had just resisted the efforts of four males to force her into a car. When three of the men gave up and left the shooting scene in the car, defendant remained with the decedent. He then fired five or six shots at her as she grabbed a telephone pole and cried out: " 'Oh my God. Oh my God.' " Defendant shot her twice in the back as she cried out. ■ As in *Hendricks*, this was an intentional shooting and, hence, it would have been judicial error for involuntary manslaughter instructions to have been given.[5] Our conclusion in this regard is consistent with several Court of Appeal decisions. (*People* v. *Evers* (1992) 10 Cal.App.4th 588, 598 [12

[5]Defendant's citation to *People* v. *Glenn, supra*, 229 Cal.App.3d at page 1467, is without merit insofar as that opinion discusses the relationship of a killing in an honest but unreasonable belief in the necessity to defend against the imminent peril to human life or great bodily injury. No doubt, our Supreme Court has held that when a defendant kills with an unreasonable but "an actual belief" in the need for self-defense because of an "immediate and present" peril that " ' *"must be instantly dealt with,"* ' " the homicide is voluntary manslaughter because there is no malice. (*In re Christian S.* (1994) 7 Cal.4th 768, 783 [30 Cal.Rptr.2d 33, 872 P.2d 574], original italics; *People* v. *Flannel* (1979) 25 Cal.3d 668, 678-680 [160 Cal.Rptr. 84, 603 P.2d 1].) *Glenn* recognizes there are Court of Appeal decisions that hold that the crime of *involuntary* manslaughter may be committed when "the nature of the attack did not justify the resort to deadly force in self-defense or that the force used in self-defense exceeded that which was reasonably necessary to repel the attack." (*People* v. *Welch* (1982) 137 Cal.App.3d 834, 840 [187 Cal.Rptr. 511]; accord, *People* v. *Clark* (1982) 130 Cal.App.3d 371, 380-382 [181 Cal.Rptr. 682].) However, in *Glenn* our colleague Associate Justice Earl Johnson correctly drew the bright line of demarcation between the mental states necessary for voluntary and involuntary manslaughter verdicts premised on imperfect self-defense. Justice Johnson wrote, "A person who kills another in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury may be guilty of voluntary or involuntary manslaughter *depending on the existence of an intent to kill.* (*People* v. *Flannel, supra*, 25 Cal.3d at p. 674; *People* v. *Welch, supra*, 137 Cal.App.3d at p. 840.)" (*People* v. *Glenn, supra*, 229 Cal.App.3d at p. 1467, italics added.) Associate Justice Johnson and his colleagues recognized imperfect self-defense could, depending on the existence of an intent to kill, result in a verdict of voluntary or involuntary manslaughter. An intentional killing in the imperfect self-defense context is voluntary manslaughter. An unintentional killing can be involuntary manslaughter. The following examples illustrate the difference. A woman may have an actual but unreasonable fear her life is about to be taken by her employer. As a result, the woman secures a shotgun and fires two blasts into the back of her employer's head because of this fear. In other words, the woman acts intentionally to kill her employer with the shotgun as a result of the actual belief in the existence of an imminent peril. Putting aside the requirements of the absence of an imminent peril that from appearances must instantly be dealt with (*In re Christian S., supra*, 7 Cal.4th at p. 783), a fact not present in the foregoing scenario, such an intentional killing based on an imperfect self-defense theory can be voluntary manslaughter. However, if the same woman testified, as were the facts in *Glenn*, that: she had a knife; as she walked toward a door, she heard her employer

Cal.Rptr.2d 637] [intentional use of violent force against a child precluded trial judge from instructing on an involuntary manslaughter theory]; *People v. Ibarra* (1982) 134 Cal.App.3d 413, 420 [184 Cal.Rptr. 639] [involuntary manslaughter instructions were unwarranted when: defendant admitted intending to shoot the decedent; defendant fired the gun using a "bracing technique for steady aim"; the firearm was fired within three feet of the decedent's chest; and the weapon was fired twice].) No involuntary manslaughter instruction should have been given.

### III. DISPOSITION

The judgment is affirmed.

Armstrong, J., and Godoy Perez, J., concurred.

Appellant's petition for review by the Supremer Court was denied June 14, 1995.

---

approach; she thought the employer was about to grab and attack her; she instinctively turned around and the employer "got struck"; and there was no intent to kill—involuntary manslaughter would be a possible verdict under the Court of Appeal authority cited in *Glenn*. (*People v. Glenn, supra*, 229 Cal.App.3d at p. 1464.) The key point is that in the latter scenario, there was evidence the killing was unintentional; hence, the crime could be an involuntary manslaughter. *Glenn* draws the correct distinction between intentional and unintentional killing. In the present case, our Supreme Court's decision in *People v. Hendricks, supra*, 44 Cal.3d at page 643 compels the conclusion defendant intentionally killed the decedent, just as in the first scenario described in this footnote. Therefore, *Glenn* does not mandate involuntary manslaughter instructions be given because the killing was intentional.