Filed 3/3/14  P. v. Camargo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>IVAN SERRANO CAMARGO,<br><br>  Defendant and Appellant. | F064077<br><br>(Super. Ct. No. F09904698)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Ivan Serrano Camargo was convicted by jury, in count 1, of the murder of Pauline Marie Rangel (Pen. Code, § 187, subd. (a))[1]; in count 2, leaving the scene of an accident which caused death or great bodily injury (Veh. Code, § 20001, subd. (a)); in count 3, driving while under the influence of alcohol and/or a drug and doing an act or neglecting a duty imposed by law, which proximately caused bodily injury to Rangel (Veh. Code, § 23153, subd. (a)); and, in count 4, driving with .08 percent blood-alcohol level causing injury and doing an act or neglecting a duty imposed by law, which proximately caused bodily injury to Rangel (Veh. Code, § 23153, subd. (b)).  Camargo was sentenced to 15 years to life for the murder.  Sentence on the other counts was imposed and stayed pursuant to section 654.

On appeal, Camargo contends that the trial court erred when it failed to instruct on involuntary manslaughter under section 192, subdivision (b) as a lesser included offense of murder; that the prohibition against instructing on involuntary manslaughter as a lesser included offense of implied malice murder committed in driving a vehicle denied him his right to equal protection; that instructing that evidence of uncharged criminal acts could be considered true if proven by a preponderance of the evidence violated his right to have guilt established beyond a reasonable doubt; and that cumulative error occurred.  We disagree and affirm.

## STATEMENT OF FACTS

We view the evidence in the light most favorable to the verdict and resolve all conflicts in its favor.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Barnes* (1986) 42 Cal.3d 284, 303.)

On August 11, 2009, after 10:00 p.m., Navdeep Uppal, who lived near the intersection of Peach and Manning Avenues in Fresno, heard a collision and told his

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

2.

brother to call 9-1-1. Within five minutes, Uppal and his brother arrived at the intersection and saw Camargo, with blood on him, walking towards them from a pickup truck. As Camargo approached, Uppal asked if he was alright, but Camargo did not respond. Camargo was not walking straight, as if he was intoxicated.

A green Honda Civic was visible 25-30 feet from the intersection, in a field by an irrigation canal. Camargo walked toward the Honda. Others gathered at the scene and Uppal lost sight of Camargo.

California Highway Patrol officers arrived at the scene at about 10:30 p.m. There, officers saw Camargo's white GMC pickup with major front-end damage, consistent with high-speed impact. The driver's door was open and the pickup empty. There were beer cans on the floorboard and there was a strong odor of alcohol in the pickup. Several beer cans were open, some were crushed, and there was beer soaked into the floorboard. Items inside the pickup were scattered, and there was blood on the steering wheel.

The Honda Civic, located on the other side of the canal, had major damage to the passenger side, almost to the gear shift in the center of the vehicle. The Honda also sustained damage to the front end, hood, trunk, windshield, pillars and roof, indicating the Honda had rolled over at least once. Damage to the passenger side of the Honda matched damage to the front end of the pickup, indicating that the pickup broadsided or "T-boned" the Honda. Physical evidence at the scene indicated that, upon impact, the Honda changed direction, continued up a dirt bank, struck a concrete water valve with the driver's side door, went airborne, cleared a 17-foot wide canal at a diagonal, landed on its wheels, overturned on a dirt access road, and came to rest on its wheels as it struck a guide post in a vineyard. The lack of skid marks approaching the intersection indicated that neither driver braked before impact.

Inside the Honda, officers observed Rangel, slumped to her side. She had a seatbelt on, but sustained major head trauma. She was unresponsive and had no pulse. A

3.

subsequent examination revealed that Rangel died from head and chest trauma due to blunt impact from the collision.

People at the scene indicated the direction in which Camargo had left. With the aid of a helicopter and heat-seeking device, Camargo was discovered in a vineyard. After refusing to comply with directives to surrender, officers forcibly removed Camargo from the vineyard and apprehended him.

Camargo had a seatbelt abrasion over his left shoulder, consistent with being in the driver's seat at the time of the collision. He had minor abrasions on his left cheek and earlobe, and blood on his shirt. Officers noted Camargo had signs of intoxication, including a strong odor of alcohol on his person; red, watery eyes; slurred speech; and was slow to respond to officers' questions. When asked if he had been drinking, Camargo stated that he had.

After Camargo was advised on and waived his *Miranda*[2] rights in Spanish, an officer interviewed him in Spanish about the collision. Camargo said that he drank four 12-ounce cans of Bud Light beer between 11:00 a.m. and 6:00 p.m. According to Camargo, he was going about 60 miles per hour, did not see the stop sign at the intersection and "must have ran it." Camargo felt something "hard" hit him. After the collision, he became frightened and did not want to get caught, so he hid in the vineyard.

Blood drawn at 11:52 p.m. showed a blood-alcohol content of 0.14 percent. Due to the time gap between the collision and the blood draw, it was estimated that Camargo's blood-alcohol content at the time of the collision must have been 0.17 percent. Based on a hypothetical that assumed Camargo's approximate height and weight and his claimed amount of drinking, an expert testified that the person should not have had any alcohol in their system at 10:15 p.m. Based on a hypothetical that assumed Camargo's approximate height and weight, his measured blood-alcohol content of 0.14 percent, and

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436, 474.

4.

circumstances of the collision, the expert testified that the driver could not safely operate a motor vehicle.

Examination of the pickup showed that its speed was approximately 76 miles per hour at impact and there was no indication that Camargo had applied the brakes. Both the pickup and the Honda were found to be fully functional prior to the collision, and both had headlights on at the time of the collision.

It was stipulated at trial that Camargo had previously been arrested for driving under the influence in November of 2006 and again in August of 2007. In the first instance, he pled guilty to driving with a .08 percent blood-alcohol level (Veh. Code, § 23152, subd. (b)); in the second with "wet reckless" driving (Veh. Code, § 23103, pursuant to Veh. Code, § 23103.5). Camargo was on probation for both offenses at the time of the August 2009 collision. Camargo received formal warnings at the time he entered his pleas, including potential liability for murder, and he had attended various classes on the potential consequences of driving under the influence.

In Camargo's defense, two people testified that they had been with Camargo on the evening of the collision. Both testified that Camargo looked tired and stressed, but not intoxicated when they saw him.

A licensed mechanical engineer, an expert in collision reconstruction, estimated that the pickup was traveling between 62 and 69 miles per hour at the time of the impact.

## DISCUSSION

### I. INSTRUCTIONS ON LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER

Camargo argues the trial court erred by failing to instruct the jury, sua sponte, on involuntary manslaughter as a lesser included offense of murder, and that his conviction must be reversed for this failure. We disagree.

""""[U]nder California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged

5.

in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser."'" (*People v. Sanchez* (2001) 24 Cal.4th 983, 988 (*Sanchez*), overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229, and quoting *People v. Breverman* (1998) 19 Cal.4th 142, 154, fn. 5.)

In general, the trial court has a duty to instruct the jury sua sponte as to the principles of law relevant to and governing the case. (*People v. Wims* (1995) 10 Cal.4th 293, 303, overruled on other grounds in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326; *People v. Saddler* (1979) 24 Cal.3d 671, 681.) This duty extends to "instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense" have been established, but instruction on lesser included offenses are not required if "there is no evidence that the offense [is] less than that charged." (*People v. Breverman, supra,* 19 Cal.4th at p. 154; *People v. Barton* (1995) 12 Cal.4th 186, 200-201.) Instructions on lesser included offenses must be given whenever there is "'"'evidence from which a jury composed of reasonable [persons] could have concluded"'" that the particular facts underlying the instruction did exist." (*People v. Wickersham* (1982) 32 Cal.3d 307, 324, disapproved on other grounds in *Barton, supra*, at p. 201; *People v. Flannel* (1979) 25 Cal.3d 668, 684.)

Section 192, subdivision (b), defines involuntary manslaughter as "the unlawful killing of a human being without malice" during "the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." Most importantly to our discussion, subdivision (b) also provides in pertinent part: "This subdivision shall not apply to acts committed in the driving of a vehicle." (*Ibid.*)

Despite the fact that section 192, subdivision (b), is very clear that involuntary manslaughter is inapplicable to acts committed in the driving of a vehicle and despite the fact that defense counsel, with Camargo's approval, withdrew her request for such an

6.

instruction[3], Camargo still makes various arguments that involuntary manslaughter instructions should have been given sua sponte. We find no merit to any of Camargo's arguments.

Camargo correctly notes that the Legislature amended California's involuntary manslaughter statute in 1945, now codified in section 192, subdivision (b), to preclude the application of involuntary manslaughter to unlawful homicides committed in the driving of a vehicle by specifically stating, "[t]his subdivision shall not apply to acts committed in the driving of a vehicle." It simultaneously created a third type of manslaughter, denominated "vehicular" manslaughter, now codified in subdivision (c) of section 192. (Stats. 1945, ch. 1006, §§ 1-2, pp. 1942-1943.)

According to Camargo, the purpose of the 1945 amended statute was to ensure that vehicular homicides would be prosecuted under the then-new vehicular manslaughter statute. For more than 30 years after the amendment, cases of vehicular homicide were prosecuted as vehicular manslaughter, not murder, except where the defendant's conduct fell within a felony-murder theory. (See, e.g., *People v. Calzada* (1970) 13 Cal.App.3d

---

**3** Prior to commencement of jury selection, Camargo submitted requested jury instructions, including CALCRIM No. 580 [involuntary manslaughter, as a lesser included offense of murder; No. 642 [lesser included offenses when defendant charged with second-degree murder]; No. 572 [voluntary manslaughter]; No. 590 [gross vehicular manslaughter while intoxicated; and No. 591 [vehicular manslaughter while intoxicated]. After discussion over the course of several days, including the possibility of amending the information to add a charge of a lesser included offense which the prosecution chose not to do, defense counsel withdrew her request for instruction on any lesser offenses. When the court asked defense counsel if she was, "in essence, then, asking the jury simply to decide the homicide issue on the basis of the second degree murder as charged," counsel stated that she was. The court then addressed Camargo and explained that this meant it would be a "straight up or down decision," and that "[i]f the jury finds there was implied malice on your part, then they can convict on the second degree murder. If they decide that there was no implied malice on your part, then there is no homicide crime that they can convict you of, only the driving under the influence and the other related charges." Camargo stated that he agreed with that decision.

603, 605-607.) It was not until *People v. Watson* (1981) 30 Cal.3d 290, in which our Supreme Court held that a death in a traffic collision may be prosecuted as second-degree murder with implied malice and not exclusively as vehicular manslaughter. (*Id.* at pp. 293, 295-299.) Camargo argues therefore that the legislative purpose of the 1945 subdivision (b) amendment to section 192 "has no application to a case like [his], where the prosecutor has chosen to prosecute outside the scope of the vehicular manslaughter statute and instead file a murder charge in a vehicular homicide case."

To further support his argument, Camargo relies on our Supreme Court's decision in *Sanchez, supra,* 24 Cal.4th 983, which held that gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) is not a lesser included offense of murder because the statutory elements of murder do not include all of the elements of gross vehicular manslaughter while intoxicated. In other words, murder can be committed in ways other than by a motor vehicle or while intoxicated. (*Sanchez, supra,* at pp. 985, 988-989, 992.) But, according to Camargo, since *Sanchez* cites with approval prior case law holding that involuntary manslaughter is generally classified as a lesser included offense of murder (*Id.* at pp. 989-990), *Sanchez* does not preclude instructing on involuntary manslaughter as a lesser included offense of murder in a situation such as his because involuntary manslaughter does not include as an element the use of a motor vehicle. In other words, Camargo maintains that despite the express language of section 192, subdivision (b) at issue here - "[t]his subdivision shall not apply to acts committed in the driving of a vehicle" - subdivision (b) must be construed so that "generic" involuntary manslaughter is a lesser included offense of "generic" murder committed with a vehicle.

We disagree with Camargo's claim that involuntary manslaughter is a lesser included offense of murder in a case involving vehicle homicide. Such an assumption ignores the plain language of section 192, subdivision (b), the fundamental definition of a lesser included offense, and the reasoning and holding in *Sanchez*, on which he relies.

The question in *Sanchez* was whether the defendant could be convicted of both gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) and murder. The court in *Sanchez* determined that the defendant could be charged and convicted of both offenses but that gross vehicular manslaughter while intoxicated is not a lesser included offense of murder. In its reasoning, the *Sanchez* court first noted that,

> "Although the general tradition relied upon by defendant is well established, this court has not previously considered the question whether the settled practice of treating manslaughter as an offense necessarily included within murder should be extended to the more recently created crimes of vehicular manslaughter while intoxicated, and defendant does not identify a tradition of comparable pedigree with respect to such crimes." (*Sanchez, supra,* 24 Cal.4th at p. 990.)

It then reasoned:

> "Although it long has been held that manslaughter is a lesser included offense of murder, this tradition has not explicitly included offenses requiring proof of specific elements unique to vehicular manslaughter. Unlike manslaughter generally, vehicular manslaughter while intoxicated requires proof of elements that are not necessary to a murder conviction. The use of a vehicle while intoxicated is not merely a 'circumstance,' but an element of proof when the charge is gross vehicular manslaughter while intoxicated. Gross vehicular manslaughter while intoxicated is not merely a degree of murder, nor is it a crime with a lengthy pedigree as a lesser included offense within the crime of murder." (*Id.* at p. 991.)

As noted by respondent, the ultimate result of the *Sanchez* decision is that, because gross vehicular manslaughter is not a lesser included offense of murder and a defendant is therefore not entitled to such lesser included instructions, the prosecutor in a drunk-driving murder case must charge both vehicular manslaughter and murder or, if it chooses to only charge a defendant with murder, it risks an acquittal on the murder charge in the event the jury determines the facts do not support a finding of implied malice aforethought. Thus, *Sanchez's* holding does not advance Camargo's position.

Most importantly, Camargo's argument ignores the plain meaning of the statutory language set forth in section 192, subdivision (b), which clearly states that involuntary

9.

manslaughter cannot be charged as a matter of law in cases involving allegedly unlawful homicide committed through the use of an automobile. "Statutory construction begins with the plain, commonsense meaning of the words in the statute, '"because it is generally the most reliable indicator of legislative intent and purpose."' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 885.) Witkin explains that this statutory provision "makes the ordinary definition of involuntary manslaughter inapplicable to acts committed in driving a vehicle." (1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against the Person, § 262, p. 1086.)

Under the plain meaning of the foregoing language in the involuntary manslaughter statute (§ 192, subd. (b)), which Camargo refers to as "generic", involuntary manslaughter cannot be charged as a matter of law in cases involving homicides committed through the use of a vehicle. As discussed, the constitutional right to jury instructions on lesser included offenses is not absolute because the defendant must present evidence substantial enough for a jury to convict the defendant of the lesser included offense. (*People v. Breverman, supra,* 19 Cal.4th at p. 162.) Here, the evidence did not merit the jury's consideration of involuntary manslaughter under section 192, subdivision (b). Camargo committed the offense while driving a motor vehicle and he could therefore not be charged with or convicted of involuntary manslaughter. He therefore had no right to have the jury instructed on involuntary manslaughter.

We finally reject Camargo's notion that, if the trial court instructs only on murder in a case involving death occurring due to a defendant's driving under the influence, an absurd result might occur, namely that the jury cannot return a manslaughter verdict. In other words, Camargo's concern is that, because the jury has to make an "all or nothing" decision, it will convict even if the evidence does not support all of the elements of the allegation. But, as recognized in *People v. Valentine* (2006) 143 Cal.App.4th 1383, 1387:

10.

> "[I]t has never been the law that an accused is entitled to instructions on offenses for which he is not charged in order to urge the jury that he could have been convicted of something other than what is alleged."

If the prosecution charges a defendant only with murder, and the jury determines that implied malice has not been established, the result is not absurd - the result is an acquittal on the sole charge of murder. If the prosecution makes this election, it must accept such a verdict from the jury.

In sum, we conclude the trial court did not err by failing to sua sponte instruct the jury that involuntary manslaughter under section 192, subdivision (b) is a lesser included offense of second degree murder based on implied malice as charged in count 1.

Moreover, even if we were to somehow find that the trial court should have instructed the jury on involuntary manslaughter, any error would have been harmless. An examination of the record does not establish a reasonable probability of a more favorable result. (*People v. Breverman, supra,* 19 Cal.4th at p. 165; accord, *People v. Thomas* (2012) 53 Cal.4th 771, 814.)

> "At least since 1981, when our Supreme Court affirmed a conviction of second degree murder arising out of a high speed, head-on automobile collision by a drunken driver that left two dead, California has followed the rule in vehicular homicide cases that 'when the conduct in question can be characterized as a wanton disregard for life, and the facts demonstrate a subjective awareness of the risk created, malice may be implied ….' [Citation.] In such circumstances, 'a murder charge is appropriate.' [Citation.] So-called implied malice second degree murder … is committed 'when a person does ""'"an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life"'' …." [Citations.] Phrased in a different way, malice may be implied when [a] defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life.' [Citation.] '[A] finding of implied malice' … 'depends upon a determination that the defendant actually appreciated the risk involved, i.e., a subjective standard.'" (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 109-110, quoting *People v. Watson, supra,* 30 Cal.3d at pp. 296-297, 298, 300, italics and fn. omitted.)

11.

The evidence in the instant case overwhelmingly supports a finding of implied malice. Camargo had two prior convictions for allegations involving drinking while driving, he had attended classes on the consequences of driving under the influence and was repeatedly advised that he could be charged with murder if he killed someone while driving under the influence. Unfortunately, he drove again while drinking. He drove with a blood-alcohol content greatly in excess of the legal limit, he was speeding in excess of 75 miles per hour, and he ran a stop sign before tragically ending the life of an innocent individual. He then ran from the scene and hid to avoid detection. It is not reasonably probable a jury would have found that he did not appreciate the risk involved in his actions or act in wanton disregard for human life. (*People v. Ortiz, supra,* 109 Cal.App.4th at pp. 109-110.) Camargo's conviction for implied malice second degree murder will not be disturbed.

## II. EQUAL PROTECTION

In the alternative to the above argument, Camargo contends that defining involuntary manslaughter under section 192, subdivision (b) to exclude acts committed in the driving of a vehicle violated his right to equal protection. Camargo's argument is that all defendants charged with implied malice murder are "entitled" to a jury instruction on involuntary manslaughter as a lesser included offense, except those defendants charged with "acts committed in the driving of a vehicle."

Camargo, however, bases his argument on a faulty premise. "A defendant claiming that state legislation violates equal protection principles must first demonstrate that the laws treat persons similarly situated in unequal manner." (*People v. Timms* (2007) 151 Cal.App.4th 1292, 1302.) But not all defendants charged with implied malice murder are entitled to a jury instruction on involuntary manslaughter as a lesser included offense. As explained earlier, a defendant is entitled to an instruction on a lesser included offense only if the record contains substantial evidence of the lesser offense. (*People v. Moore* (2011) 51 Cal.4th 386, 408-409.) Contrary to Camargo's suggestion,

12.

the evidence in an implied malice murder case does not necessarily require a jury instruction on involuntary manslaughter as a lesser included offense. (See, e.g., *People v. Dixon* (1995) 32 Cal.App.4th 1547, 1550, 1556-1558 [defendant charged with second degree murder not entitled to instruction on involuntary manslaughter as a lesser included offense because substantial evidence did not support the instruction]; *People v. Evers* (1992) 10 Cal.App.4th 588, 592, 598 [same].)

Based on the foregoing, we reject Camargo's equal protection challenge.

## III. INSTRUCTION ON UNCHARGED CRIMINAL ACTS

Camargo contends that CALCRIM No. 375, which states evidence of uncharged criminal acts could be considered true if proven by a preponderance of the evidence, violated his federal constitutional right to have guilt established by proof beyond a reasonable doubt. We disagree.

The trial court instructed the jury with CALCRIM No. 375 as follows:

> "The People have presented evidence that the defendant committed other driving under the influence offenses that were not charged in this case. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. [¶] Proof by a preponderance of the evidence is … a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant knew his act was dangerous to human life when he allegedly acted in this case. [¶] In evaluating this evidence consider the similarity or lack of similarity between the uncharged offenses and acts and the charged offenses. [¶] Do not consider this evidence for any other purpose. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of murder in the second degree. The People must still prove each charge beyond a reasonable doubt."

Camargo acknowledges that a similar argument was rejected by the Supreme Court in *People v. Carpenter* (1997) 15 Cal.4th 312 (addressing CALJIC No. 2.50.1), but argues that *Carpenter* is distinguishable. Here, as argued by Camargo, the instruction was unnecessary in light of the stipulations at trial as to the truth of the uncharged acts. Camargo argues that giving the instruction anyway confused the jury by needlessly introducing the preponderance of the evidence standard into the case.

We agree with Camargo that this instruction was unnecessary in light of the stipulations at trial as to the truth of the uncharged acts. But we disagree that the instruction confused the jury. The jury was instructed, pursuant to CALCRIM No. 200, in relevant part, that "[s]ome of these instructions may not apply, depending on your findings about the facts of the case.… After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." Furthermore, while CALCRIM No. 375, as given, authorized the jury to use the preponderance standard to determine whether Camargo committed the uncharged offenses, it explicitly linked this lesser standard of proof with the uncharged prior driving under the influence offenses and reminded the jury that this evidence was not "sufficient by itself to prove that the defendant is guilty of [m]urder in the [s]econd [d]egree. The People must still prove each charge beyond a reasonable doubt."

Nothing in CALCRIM No. 375 authorized the jury to use a preponderance of the evidence standard for anything other than the preliminary question of whether Camargo committed the uncharged offenses. Viewing the instruction as a whole, it is unreasonable to think the jury would have interpreted the instruction to authorize conviction of the charged offense based on a lower standard than proof beyond a reasonable doubt. (See *People v. Reyes* (2008) 160 Cal.App.4th 246, 252 [similar analysis applied to CALCRIM No. 852, relating to evidence of prior uncharged acts of domestic violence].)

The preponderance standard for uncharged offenses does not violate the state or federal Constitution, does not reduce the prosecution's burden of proof, and does not

violate due process.  (*People v. Carpenter, supra,* 15 Cal.4th at pp. 380-383; see also *People v. Reliford* (2003) 29 Cal.4th 1007, 1013-1016; *People v. Johnson* (2008) 164 Cal.App.4th 731, 738-740; *People v. Reyes* (2008) 160 Cal.App.4th 246, 250-253.)  We are bound by decisions of the California Supreme Court.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  We reject Camargo's claim to the contrary.

## IV. CUMULATIVE ERROR

Camargo contends finally that the cumulative impact of all of the above errors deprived him of a fair trial.  We have either rejected Camargo's claims of error and/or found that any errors, assumed or not, were not prejudicial.  Viewed cumulatively, we find that any errors do not warrant reversal of the judgment.  (*People v. Stitely* (2005) 35 Cal.4th 514, 560.)

**DISPOSITION**

The judgment is affirmed.

_____
Franson, J.

WE CONCUR:


_____
Gomes, Acting P.J.


_____
Poochigian, J.

15.